I mentioned to the council and attorneys that we asked you to be here early, and we're running a little late. I apologize for that. We were running late because of matters from hanging open this morning. I acknowledge that your time is important, too, and don't like to be wasted. Case up next is 413-0735, Homer v. Jones. For the accountant is Frederick Roth. Yes, sir. And for the attorney is Lisa Nielsen, he or she, and William Alston. But you won't have to argue. Is that correct? Ms. Nielsen won't be arguing. You'll be presenting the diary after the effort. Yes, I will. Okay. Thank you, folks. Okay. Mr. Roth, you may be seated. Good afternoon, Justices. My name is Fred Roth, opposing counsel. Members of the audience, may it please the Court. First, I want to say thank you for allowing oral argument in this case. This is a situation that is unusual. It's unique. It calls for the exception to the common law of rules. It calls for the exception referred to as the Good Samaritan exception. We have a situation here where Bob Kochenauer, an attorney, an executor of an estate, wrote out a check to Martha Hayden in the estate of her only son, Jay Hayden, and he had the check endorsed on the back payable to Edward D. Jones and Company, had a signature put on it, whether it was hers or not is a question of dispute. He took that check to Dwight Erskine and Edward Jones, and they deposited that check into an Edward D. Jones and Company account. They then moved that money to a newly established, that day established, brokerage account in the name of Robert Kochenauer alone, and then he used that money to make an investment in perhaps gold bullion or some high yield equity fund. No money was ever received by Martha Hayden. The money was received by Bob Kochenauer. It is undisputed that at the time of that transaction, Edward Jones made no effort to attempt to contact Martha Hayden and find out what is her wishes for this money that was being deposited into an Edward Jones bank account. They made no attempt to find out what Martha wanted to have done with this. Martha was not a customer of Edward Jones. Martha didn't owe Edward Jones any money at the time of this transaction. Under the Good Samaritan exception, the rule being normally there is no obligation to non-customers, but in this instance it was a fraud. It was a fraud that was taking place to effectively steal the money of Martha and give it to Bob Kochenauer. In this instance, different than the normal circumstance, Edward Jones should have done something other than just take the money and transfer it to Bob Kochenauer. Some years later, when Martha died and she had been mentally incapacitated for some time, some years later, Charles Palmer was appointed as Administrator to Collective for Estate and he made inquiries through Steve Bleichly, an attorney, to Edward Jones. In response, Edward Jones said, we know nothing about any of this. We know nothing about the $188,000 check. We don't have any accounts for Bob Kochenauer. We don't have any accounts for Bob. And as a consequence of that, nothing was learned. Subsequently, because of a petition to revoke the plea agreement of Bob Kochenauer, he was given a second chance to come clean and cooperate with the Attorney General for the State of Illinois and he participated in four days of depositions and answered questions and this subject came up. Part of that transcript was given to Dwight Erskine to remind him or ask him, do you remember anything about this? And he wrote a letter and it's in the appendix saying, I don't remember any of this. I don't remember any account. I don't remember any transaction. If there had been such a transaction, I would have remembered it because it's so large for 1988. He later admitted that the transaction did take place. He doesn't remember much about it. He doesn't remember ever knowing or trying to contact Martha Hayden. Edward Jones, on the other hand, was eventually sued and they came forward with all kinds of information to show that they had multiple records of Bob Kochenauer. But at the time of the subpoena from Steve Blakely on behalf of Charles Palmer as administrator for both the estate of Jay Hayden and for Martha Hayden, they had responded with 132 pages of documents but not one about the Bob Kochenauer account. As is in my appellate argument, I point out that their corporate representative identified eight different sources, online available sources, that you could type in Kochenauer's name into the Edward Jones computer and come up with records on this transaction from 1988. Mr. Roth, even if we assume that there was some type of fraud or there was some responsibility on the part of Edward Jones to check into this, don't you have a statute of limitations problem? I think the statute that I'm saying applies is fraud. And from 1988, that would be at least five years if not ten because of written documents. If it's five years and she was deemed to be incapacitated with the lack of testamentary capacity by Judge Pacey in her estate and the will was thrown out, the will that was written in 1993, less than five years from the date of this transaction. The will was thrown out as of February 93. Five years would have been August of 93. So the five-year statute was still there. As a fraud situation, I believe the discovery rule still applies. Between 1993 and the date of her death in 2001, she was totally incapacitated and never regained any kind of capacity to be able to look out for herself or to look into anything. After her death, it was turned over to an administrator to collect. At first it was Joe Kochenauer, brother of Bob. Then he was removed. Then Tobias Berry for a few months. Then finally Mr. Palmer. Mr. Palmer did make inquiries. And in response to those inquiries, both to Mr. Erskine and Edward Jones, they denied anything. They denied having any information. They denied there was anything. And I put that into the category of fraudulent concealment because— 3-118G of the UCC provides special implications in this case? No. That's a conversion provision of the UCC. It's not a fraud provision whatsoever. That's a simple conversion of taking someone's property and converting it. That's not what happened here. This was a theft. This was a fraud. In which it couldn't have occurred but for Edward Jones refusing to even attempt to contact Martha and verify, where should this money go? You're not our customer. You're no one that we owe money to. We have this money of $188,000 from this check into our company account. And we know nothing about you. We don't know who you are. We don't know what you want us to do with this money. And they took the money and established a new, brand-new account for Robert Kopenhauer, and they put the money into it, and then they sold him an investment. They had no basis for that whatsoever. And I think the page 17 of my brief where I quote from the Traveller's case, where it's talking about the good face of Meredith, and it says, The drawer in such a case as this, to repeat, is not a customer of the payee institution or anyone close to whom payee would owe a duty of care under normal tort principles. Rather, it's a third party whom the payee is asked to rescue from a possible fraud. Why isn't this a matter of conversion? Is it not what you allege Jones did? No. I've never alleged conversion. I've never said conversion was a consequence. Why isn't that what the facts are going to show so that Section 3-118G governs? Well, because this was a scheme to defraud between Mr. Kopenhauer and Edward Jones and Dwight Erskine together, acting in concert, to defraud her of her money. This was not a situation where there was some negligent act or some oversight where they just happened to pay the money out to someone incorrectly. This falls under the Good Samaritan exception, which is separate and apart from anything related to the UCC statutory cause of action of conversion. Conversion, by its nature, is assuming that the person that is subject or the victim of the conversion knows that they have money or that they're missing money or something's going on. In this instance, there's no such facts. There's no facts ever been presented that Martha Hayden ever knew about any of this or had any knowledge of any of this or was even contacted by Kopenhauer or Dwight Erskine or Edward Jones about this transaction. How is that relevant to conversion? I don't understand. It sounds to me like conversion must mean someone got involved with the money and took it. Isn't that what happened? No. They took the money and gave it to Kopenhauer. They didn't take the money. They gave it to somebody else who came in. I don't see that in the same light as someone who takes the money for themselves. If Jones had taken the $188,000 and put it in their bank and held on to it and refused to give it back to her, I'd call that conversion. But that's not what happened. They took her money and, as a part of the scheme to defraud, gave it to Kopenhauer. Then when the questions were raised, what happened to the money, they said, we don't know anything until we force their hand by filing a suit. Why isn't the decision of this Court in the head is governing your argument about the discovery rule? And when we hold there, the discovery rule doesn't apply. Are there actions for conversions and negotiable instruments? Sure. Conversion and discovery rule doesn't apply for good policy reasons that don't apply here. In that instance, as I was saying, that's when you know, and when the person is converting it for themselves, and you are missing the money, and you only got three years to come up with something. I mean, you can't sit on your hands. Because if I have a checking account, and they take money out of my account, and I don't take any action within a certain period of time, it's over. It's done. It has nothing to do with the discovery rule. But here we're talking about a fraud. So what if you have a checking account here of 9 Campus Memphis? I'm sorry? 9 Campus Memphis, you've been rented, and you don't know what's going on. It's a problem. It's a problem. But that's not what happened here. How about you answer the question about what's the effect? Well, crazy people have accounts. Crazy people are demented and have accounts. And I guess that's a real problem for those crazy, demented people. But here, when somebody is doing an affirmative fraud, I don't think they get out under the rule of conversion. This was an actual set of events that took place where Jones took the money, put it into their account, and transferred it to him with no attempt to confirm whatsoever from Martha, what do we do with your money? This wasn't a customer. This wasn't someone that owed them money. It's a third party, unknown to them, that they're taking the money and giving it to somebody that's right in front of them that they set up a new relationship with. That's a whole series of events different than me having a checking account and not paying attention to it, and they debited or took out some money from my account and I didn't pay attention for a period of time, and now it's too late. I had a relationship with the bank there. I had some obligations to look at my account. But we have no facts in this case that Martha knew that this money ever went to Edward Jones, and that they used it in a way that they decided to use it without even contacting her. Fraud is different than conversion. If we were talking about conversion, we wouldn't be here because there is no discovery rule. And conversion deals with those sets of circumstances that are very different than what we're dealing with here. It's not a conversion when someone goes to Edward Jones with a check and gives him $188,000 and they give it to somebody else who they open a new account relationship with. That's a whole different genre of cause of action in my mind. That's where the Good Samaritan is talking about rescue from possible fraud. It doesn't say rescue from a possible conversion of your money. No. This is fraud. This is outright theft. This is a situation where... No. So here in Travelers it says to ask to rescue from a possible fraud. It's talking about stopping a fraud from happening. Money that was not Jones's money is being deposited into their account, and they're giving it to someone other than the person they received it from, in this instance Martha Hayden. The bank is standing in a position of dealing with people's money as the basis for this in Illinois law. On page 18 of the brief. On the other hand, a bank is all of these. The public is invited to use its conveniences as a place of deposit. It holds itself out as a trustworthy for such purposes. They hold a sacred spot in our system of capitalism, and we protect them like sacred cows. But we shouldn't protect them from outright fraud with somebody's money that they had no business sending it over to Kochenauer. Why they did it, what their motivations were, I don't know. I don't think it really matters. The point is, they got money from someone they had no relationship with, they put it into their bank account, and then they moved it over to someone else who is a new customer of theirs, who they have a new relationship with as a customer, and give him the money and sell him an investment. All to profit for themselves. For their profit and for their gain. How did Jones profit from this? They got a new account, and they sold him an investment, and started a relationship between themselves and Bob Kochenauer as a customer. That's the business they're in. They profited from that. They gave him the money to make an investment with them, out of someone else's money that they didn't know, and they had no authorization to do any of it. From anyone. They didn't even attempt to contact anyone. And I have to believe, if they were so clearly within their rights, why did they refuse to turn over the information to the subpoena? Why did they deny that they had any account for Bob Kochenauer? We can all speculate why they didn't do that. Their corporate representative, when I deposed him, said they could have found it in this report, in this report, in this report, in this report, by just plugging in his last name on the computer, and it would come instantly up. And they've never given us an explanation why they never found it. It took them three or four months to respond to Mr. Blakely. They kept asking for, what's his account number? We didn't have any account number. We had nothing. They had it all, and they responded with a verification to the subpoena, saying, wait, this is all we have, we have nothing else. And we find out all they had to do with their optical scanners is type in the name Kochenauer and write up on the screen, and it would have all of these reports that I identified in the fax. It could have come up on the screen. And Mr. Erskine was given copies of Kochenauer's deposition testimony saying that he did this transaction with Erskine, and he writes a letter and says, no such thing happened. Later recanted. Later said, yes, it did happen. I was wrong. His letter is exhibit F in the thing. He goes down through it. I don't recall ever having this. I never did this. I didn't act as this. I do not recall Kochenauer or the Haydens or any other having purchased this, nor do I believe they ever did. This is after he's given the sworn testimony from a former judge who's trying to save his key agreement, and he's saying it didn't happen. Now he says it did. Now he agrees it did. Now he found his commission statements from 1988 that produced those in Discovery. If they're so comfortable, why does both the broker and his firm refuse to comply in good faith with Discovery? I don't know. I can make those arguments at the end, but the point is they took money that wasn't theirs and gave it to somebody else, and the rest of the story we may never know. Kochenauer takes the Fifth Amendment most of the time. They should have attempted to contact Martha to find out, what do you want us to do with the money? That's what the good Samaritan requirement is under Illinois law. You're right. This is the exception. This is when you don't have a relationship, and the bank gets this money, almost $200,000, and doesn't have any direction from anyone what to do with it. Yes, a common law duty under the cases that I cited, the Milano case and the other cases, say specifically, this is unusual, but it imposes this duty because of the special position that banks hold within our system. She misunderstood a very key fact. If you look on page 16 of the appellate brief, I point out that the case that she thinks controlled said pay to the order of Union Planners Bank for deposit only Lincoln Fidelity escrow account, and gave the account number. She somehow thinks that our case is similar to this payment case here. This was payment to a specific escrow account at a bank. If our payment had been designed with this, and when this case is pulled up and looked at, they double space it, and they capitalize it, and they put it right there in the opinion to point out this was a specific payment to an account at a bank. And we're not going to hold the bank, Union Planners Bank, responsible for what happens in that account. In our case, it was a simple pay to... It's pay Edward D. Jones and Company Martha Hayden. It doesn't say pay to an escrow account number, blank, blank, blank. It doesn't pay to the order of this bank and this Lincoln Fidelity escrow account. It says pay Edward Jones. This check, this money, the proceeds, went into an Edward Jones Company account. It didn't go into some customer escrow account. It didn't go into something else. And unfortunately... I'm not sure I understand why the absence of the number makes such a difference. It's different when you're paying it directly to Edward Jones, or when you're paying it to an account at Edward Jones that someone else established. That is the big difference. Totally different. Right. Totally different. Jessica McCarthy, in a previous hearing, in a denial of one of their motions, in her written ruling, agreed that the money had gone from this check, out of the estate of J. Hayden, directly to Edward Jones' bank account. Not somebody else's bank account. It went to Edward Jones and Company's bank account. And then they took it from their account and put it into the Coconawa account. On their own. Thank you. Thank you. Okay. Ms. Nielsen. Thank you. May it please the Court. Okay. Thank you. Good afternoon. My name is Lisa Nielsen. I'm an attorney with Greensfelder, Hempker & Gayle. And I'm here on behalf of the appellee, Edward Jones. We request that the Court affirm the decision of Honorable Catherine McCarthy in deciding to grant summary judgment in favor of Edward Jones.  or affirm, rather, the granting of the summary judgment for two equally compelling grounds. The first is the one that was relied upon by Judge McCarthy. And that is that, as a matter of law, the plaintiff cannot establish a critical element of their fraud claim. And they are only pursuing the fraud claim here. And as the Court is well aware, in order to establish fraud, you either have to prove a fraudulent misrepresentation. There's no issue that there was not any type of misrepresentation or representation, for that matter, to Martha Hayden. And I'll get into the response to the subpoena in a little bit. Because mind you, Your Honors, that subpoena was not issued on behalf of the estate of Martha Hayden. If you note the record, the subpoena was actually issued on behalf of the J. Hayden estate. But for that and other reasons, that subpoena is completely irrelevant to Your Honors' decision. But there was no misrepresentation to Martha Hayden, whatsoever. Therefore, plaintiffs have to rely upon a fraudulent omission in order to establish their case. And as this Court is well aware, Judge Kinect, I know that you have been involved in many cases involving fraudulent omission, fraudulent concealment. And in order to establish a fraudulent omission, there must be a special or legal relationship that gives both the opportunity and the duty to speak. There was no relationship, whatsoever. It's conceded that Martha Hayden was not a customer. She wasn't a banking customer. She was in no way, shape, or form connected to Edward Jones. There was no relationship that would give either the opportunity or the duty to speak. I ask that this Court not give in to plaintiffs' request that this Court somehow make an exception to that otherwise nonexistent duty for Edward Jones. The exception that Mr. Roth discussed in his briefing a few moments ago before this panel relates to the Good Samaritan liability and Good Samaritan exception. I think it's very elementary that that is in fact a negligence principle of law. The cases that he relies upon are all negligence cases. There is one reference, as he notes, in the Traveler's case. He said, well, they're talking about fraud in this Traveler's case. If you look at that case, they are talking about the fraud of the wrongdoer. They're not talking about the analysis of a fraud claim vis-à-vis the bank that they're analyzing. In that case, they are talking about a duty of care, which we all know is a negligence concept. And therefore, the fraud, it's as though Mr. Roth would be talking about Kochenauer's fraud, analyzing Kochenauer's fraud. We're not talking about Mr. Kochenauer here. We're talking about Edward Jones and Mr. Erskine. And that is a negligence concept and it's a negligence claim. And therefore, it is inapplicable to the sole claim that we are talking about in this proceeding, which is for fraud. Even assuming that the Good Samaritan principles did in fact apply to a negligence claim, and this case did involve negligence, or it applied to a fraud claim, those cases that analyze bank situations and check situations, similar to the case at Barr, are talking about a duty that is owed to the drawer, not to the payee. And I'm reminded that, or rather like the panel to be reminded, that Edward Jones did file a motion to strike portions of appellant's brief. We filed that on April 11th. And in connection with listening to the argument today, it reminded me because there are certain characterizations that are not supported by the record. They are detailed in my motion. They're cited to by the complaint, unsupported allegations of the complaint or the attached exhibits. What's the most relevant for today as we discuss this case? One is plaintiff's characterization of the check in the briefing as containing a special endorsement that was not raised at the trial court level, that is not anywhere in the record, and that is somehow assuming that this endorsement somehow connotes a special significance that gives rise to some additional claim on their part. Also, there is nothing in the record about this deposit of this money from into an Edward Jones account and then subsequently transferred into Robert Kochenauer's account. That is actually not supported in the record In fact, plaintiff notes on page 11 of his brief that the account statement reflects that the check proceeds were deposited into the account of Robert Kochenauer. There's a lot of argument that is not supported by the record, including these allegations regarding Martha Hayden's incompetency, which I would just, again, like to remind the panel that we have filed a motion to reach the level of flagrant improprieties that, at a minimum, the court should disregard those unsupported references. Back to the main argument. One, we urge this court to affirm the decision of Judge McCarthy, who found that there was, in fact, no ability on behalf of the plaintiff to prove critical element of their fraud claim. Good Samaritan rule does not apply. This is a fraud case, not a negligence case, and even so, even if it did apply, Edward Jones is not in, does not have this particular duty. Any duty that's discussed in those cases is owed to the drawer, not the payee. Plaintiff is urging the court to embark upon or embrace a duty where Edward Jones somehow has to look and see the payee of Martha Hayden, see the endorsement, somehow track down her address and her phone number and track her down to call her. It makes sense that that duty may flow to the drawer, who on the face of the check is readily identifiable, and with the address at least a PO box where that duty would flow in favor of the drawer. The payee might be some bogus person who's forged the check or something like that? Well, and there may be no ability to track them down, and you could imagine what that would do to the stream of commerce for them to not only track them down, but then, is this your signature? And is this your signature? And do you intend to give this money to somebody else? That is nonsensical. It's a nonsensical duty. And mind you, it's not, further than the record, although Judge McCarthy did reference in her order that this signature was forged, there's nothing in the record to support that this signature was forged. So there's nothing in the record and, in fact, in the deposition of plaintiff that has been cited, and our footnote of our brief indicates that he does not know whether or not this signature was forged. Let's assume it was. What was her remedy? Her remedy was to sue for conversion under the UCC. This case, Judge Teichman, she could have sued Edward Jones for conversion. Does she want to do that? No. Why? Because the statute of limitations has long since gone. And there's a reason for the UCC, the strata and scheme of the UCC. In this case, it does not matter how the plaintiff has packaged the claim. They package it with a fraud or what have you. It is still, nevertheless, governed by the UCC statute of limitations. And that is contained in our Travelers case, Travelers v. Northwestern Mutual Life Insurance in Merrill Lynch, where the 7th Circuit Judge Posner basically says, if you're talking about the forgery of a negotiable instrument, that's conversion, and that claim is governed by the UCC and governed by the 3-year statute of limitations contained within the UCC. And as this court notes, in its decision, it's had a decision several years ago, there is no tolling that applies to a UCC statute of limitation claim. This case is very similar, Your Honors, similar to a recent case, Hawkins v. Nalick, that was decided by the Fifth Appellate District. And in that case, very similar to this case, the plaintiff was a beneficiary on an estate. The check was issued to that beneficiary. Her attorney took the check and forged her signature and deposited into the bank, and she, that happened in 2006. In 2010, she gets a new lawyer. She finds out her signature's been forged. And in that case, the court held that the claim was in fact, even though they labeled it conversion and a negligence claim, it was a UCC conversion claim. It was barred by the 3-year statute of limitations, and notwithstanding the harsh result, her claim was in fact barred. And there's policy reasons for that. The sequence of events here, Your Honors, is, you know, this happened back in 1988. I mean, I don't know what Mr. Erskine said or knew or remembered or what have you in 2005 when that letter was issued, if he says he doesn't remember what happened. But this happened in 1988. So the 3 years was then cut off in 1991. So that's when the cutoff took place. Then, and under all the case law that we cite in our brief, that can be utilized as grounds for affirming Judge McCarthy's decisions as well. So you've got the fraud. You can't prove the element of fraud. Or you've got the UCC statute of limitations. And no matter what occurred after that in 1991, we dispute what occurred as been characterized by the plaintiffs. But no matter what, it can't revive a previous stale claim. It doesn't jump start a claim that's been time barred. So... You heard Mr. Roth make much of the alleged bad dealing by Jones and Erskine in response to discovery of a weapon. Judge, I contend that if you look at the record, the record does not support his characterization. And what transpired was there was, in a completely separate matter, in the Joe Kochenauer bankruptcy case, there was a subpoena that was issued in February of 2005 to Edward Jones on behalf of the J. Hayden estate. Edward Roth described in his brief called, you have an account number, you're asking for documents. Those account numbers were not provided to Edward Jones to assist in trying to locate these antiquated documents. Maybe antiquated is a little far-fetched, but they were well over a decade old. No, those... There were some documents found, but not the specific documents relating to Robert Kochenauer's account statement. Those... The subpoena was responded to in, a few months later, in July of 2005. So, subpoenas issued by a different unrelated party in February of 2005 responded to in July of 2005. Then Martha Hayden files her citation to discover assets later that month. So, nothing that wasn't produced prevented them from then, mind you, in September, less than three months later, the statement was located. So, the statement reflecting Robert Kochenauer's account. So, this wasn't some decade-long of cover-up and subterfuge. This was... The implication is that in any event, nothing that happened in 2005 could resuscitate the case. Exactly, Your Honor. You can't, you know, jump start it. It was... It had already, at that point... At that point, it was already a stale claim, and it wasn't even, as Judge McCarthy notes, there wasn't even communication with Martha at that time either, because the subpoena wasn't even issued on behalf of Martha Hayden. If it's to the trial court, why didn't the trial court accept your statute of limitations item? The judge... Judge McCarthy did not address it. I don't know if the reason for her order was that she did not accept it. She felt that the fraud claim, she had granted her summary judgment because of the absence of an element of a fraud claim, and left it at that. You heard Mr. Roth arguing that, according to him, the Traveller's Case involved or stands for the proposition that the consumeritan aspect can apply to a fraud claim. Do you dispute that? Yes, I do, Your Honor. I'm sorry. Yes, I do, Your Honor, and I think I previously mentioned as well that the fraud that they were discussing in that case was the fraud of the wrongdoer. They weren't... In that reference, in that case, they were talking about the fraud of the wrongdoer, not fraud of the bank. They were still analyzing a negligence claim of the bank. And throughout that case, they talk about the duty of care. So it would be as though they referenced Kochenau's fraud. So the case before that involved a matter of negligence by Wells Fargo Bank? And... Wells Fargo and Charles Schwab. So, and in that case, the check was made payable to Charles Schwab and Co. They were actually the payee. So that renders a further distinction with Edward Jones. The payee on this check is Martha Hayden. So the payee on that case was Charles Schwab. You still have time. I still do. Alright. So with that, with that, Your Honors, the court should affirm the trial court's decision to enter summary judgment in favor of Edward Jones. As noted by Judge McCarthy, as a matter of law, a plaintiff cannot establish the requisite element of fraud, of a fraud claim. She does not have a fraudulent representation upon which to rely, and she can only rely upon fraud by silence. As this court has repeatedly held, in order to establish fraud by silence, you need an opportunity and a duty to speak. And there is no such duty here. She was not a customer. This does not call for an extension of the Good Samaritan exception. We're analyzing a fraud claim, not a negligence claim. And even if we were analyzing a negligence claim, that duty flows in favor of a drawer, not someone such as a payee as Martha Hayden. So in no way, shape, or form does this case meet within any of the parameters of those exceptions. If the court does not accept that as a grounds for affirmance, then clearly this case is governed by the statute of limitations that's contained within the UCC, the three-year statute of limitations. There is no tolling as provided by HADID, and similar to the case, the Nalick case, recently decided by the Fifth Appellate District, there is no tolling, and it's a straight cutoff from the three-year. If the court does not accept that the UCC does not apply, however, even under a five-year analysis, statute of limitations analysis, the court should affirm the decision, and that is similarly contained within our brief. Thank you, counsel. Thank you. Mr. Robb, did you want to double-check? Yes. Edward Jones had no business going on with Martha Hayden. We weren't stopping any stream of commerce. They're being offered a check for $188,000 payable to them. They took it, and they used it to make money. What about the distinction Ms. Nielsen drew between drawers and payees for purposes of assembly appointments? It doesn't have anything to do with it. The money was being paid... Are there cases where the claim that you're now trying to bring was successfully made with the appellate payee, as is yours? There are no reported cases on that. Would you be the first? You'd be the first. And a lot of firsts happen here, so that's where we should be. It is amazing to me that fraud by their definition doesn't apply because they apply a definition of fraud that doesn't apply here. I spelled out on page 20 of the appellate brief, in Illinois there's no general rule for determining what facts constitute fraud. And whether or not it is found depends upon the special facts of each particular case. It may be based on concealment, on fraudulent devices, on a willful, malignant act directed to perpetuate a wrong to the rights of others, unlawful appropriation of another's property by design or conduct that operates fraudulently on the rights of others and is so intended. In short, it compromises all acts of omissions and concealments, including breach of legal or equitable duty, trust, or confidence, resulting in injury to another. Jones didn't have to accept the money. They made a conscious decision, we're going to take this money from this check and we are going to decide what to do with it. They made that decision. That was in their mind, that was their thinking, that's what they wanted to do. This was an affirmative action by Edward Jones saying, I'm going to take this $188,000. You've heard Ms. Nielsen make reference to Judge Posner's description of what constitutes conversion, I guess, from the Travers case from the 7th Circuit, which kind of sounded like what I originally mentioned, as far as I understand, conversion too, that you thought now was too limited. What about Judge Posner's description of conversion and why doesn't it apply to the banks in this case? Because in that case, the check wasn't made out to the bank. No, no, no, that's not my question. The general description of conversion is, she quoted Judge Posner, why doesn't that general description of conversion apply to what happened in this case? Because this was fraud. And Posner in the other case mentions this is to protect... You talk about that as if these are competing concepts. They are. They are competing concepts. Conversion can't be part of a fraudulent scheme? Conversion could be part of a fraudulent scheme, but we're not alleging only conversion happened here, we're alleging it happened here between two parties. Well, I understand what you're alleging, because the problem is, with regard to the definition of conversion as appears in the statute of limitations, you seem to be saying it can't be conversion, and this statute doesn't apply because it's fraud. I don't understand how that works. It seems to me these are not... this is not a dichotomy between conversion and fraud. And if we don't accept your argument that it is, why does this statute apply? If you decide that this is a simple conversion, and there was no scheme to defraud here, then you will go along with the UCC three-year statute of limitations and my side will win. We'll lose. Under that... What do you mean a simple conversion? A simple conversion. Is that distinguished from some other sort of conversion? It's distinguished from a fraudulent act where a bank takes or a brokerage firm takes $188,000 from someone they don't know. In her argument, she said, well, we didn't know this person. We didn't know their phone number. We didn't know their address. We didn't even know how to contact them. Then why did you take the money from her when you don't even know who she is? It's because you had a scheme involved, and the scheme played out. You took this money from this person and you gave it to somebody else who's your new customer and made money off of it. That was the scheme. That was the fraud. If we agree with your assessment, what statute of limitation ever applies in this case? Well, the first time period would be five years. And the discovery rule applies. And she was incapacitated within the five years and never got back to capacity before she died. And then we've got the fraudulent concealment. I don't know if I heard anything to understand why they didn't comply with the subpoena, why they couldn't have just done as Representative Steve Booker said. He says, I just plug in the name, Falkenhauer, and all these different reports come up. And I attached them. Thank you, Counselor. Your time is up. Thank you.